OPINION
{¶ 1} This matter is before the Court on the Notice of Appeal of Matthew Morgan Caddy ("Caddy"), aka Stephen Lee McFarland, filed September 23, 2005. On August 31, 2004, the Dayton Police forced entry into Caddy's residence at 88 Pioneer Street, in Dayton, Ohio after they learned that Caddy admitted, at the office of a local attorney, to killing someone there. In the basement of Caddy's home, officers found a shovel, a shallow grave, a bag of lime, and the handcuffed, decomposing body of Daniel Everson. The body revealed no obvious signs of trauma. On September 23, 2004, a Montgomery County Grand Jury indicted Caddy on one count of gross abuse of a corpse, in violation of R.C.2927.01(B), and one count of possessing criminal tools, in violation of R.C. 2923.24(A). Bail was set at $500,000.00. On November 9, 2004, Caddy executed a Waiver of Time Requirements, waiving his statutory right to trial within 90 days. Also in November, 2004, the Coroner's office issued a report and death certificate indicating that Everson died as the result of a homicide. Specifically, Everson died of acute renal failure due to extensive soft tissue blunt force injuries.
 {¶ 2} A police investigation into Everson's death continued until May, 2005. During the investigation, Detective Daryl Smith learned that Everson arrived in Dayton on August 8, 2004 after leaving his home in Minnesota and traveling to Bennetsville, South Carolina, and Coshocton and Zanesville, Ohio. Smith obtained Everson's medical records and interviewed his family members to determine if Everson had a pre-existing kidney condition, and he also interviewed people Everson visited en route to Dayton, to determine if Everson suffered blunt force injuries prior to his arrival here. Blood and soil samples from Caddy's home were submitted for DNA analysis, and information on Caddy's computer was also submitted to a computer forensics analyst. Information on Caddy's computer revealed that he and Everson had entered into a master and slave relationship in which Everson was the slave. Everson "was to submit to physical torture * * * in the form of [b]eatings and rough sex" at Caddy's whim.
 {¶ 3} After the investigation, on May 12, 2005, a Montgomery County Grand Jury indicted Caddy on one count of reckless homicide, in violation of R.C. 2903.041. On May 17, 2005 Caddy executed another Waiver of Time Requirements limited to one week. On May 24, 2005, Caddy filed a motion to dismiss the reckless homicide indictment "for the reason that Defendant has been incarcerated for more than 90 days and has neither been brought to trial nor waived speedy trial rights with regard to this charge." Following an evidentiary hearing, the trial court overruled Caddy's Motion.
 {¶ 4} A jury trial began on August 30, 2005, and at the end of the day, Caddy entered pleas of no contest to all three charges and the trial court found him guilty of each charge. The trial court sentenced Caddy on September 13, 2005 to five years on the reckless homicide charge, to be served consecutively with a one year sentence on the gross abuse of a corpse charge, and concurrently with an eight month sentence on the possession of criminal tools charge. Fines were imposed but the trial court suspended them. The trial court ordered restitution in the amount of $1860.82 to be paid to the victim's family and in the amount of $7500.00 to be paid to the State of Ohio.
 {¶ 5} Caddy asserts three assignments of error. Caddy's first assignment of error is as follows:
 {¶ 6} "THE TRIAL COURT ERRED WHEN IT DENIED DEFENDANT-APPELLANT'S MOTION TO DISMISS THE CHARGE OF RECKLESS HOMICIDE BASED ON DEFENDANT-APPELLANT'S CONSTITUTIONAL RIGHT TO A SPEEDY TRIAL."
 {¶ 7} "[I]n issuing a second indictment against [a] defendant, the state [is] not subject to the speedy-trial limits of the original indictment, [where] the subsequent charges [are] based on new and additional facts which the state had no knowledge of at the time of the original indictment. Additional crimes based on different facts should not be considered as arising from the same sequence of events for the purposes of speedy-trial computation." State v. Baker (1997),78 Ohio St.3d 108, 676 N.E.2d 883 (holding that second indictment, charging defendant pharmacist with drug trafficking and Medicaid fraud, following audits of his records, was not subject to the speedy trial time limits of his original indictment for illegal sales of prescription drugs, which was based on controlled buys that occurred before the arrest and seizure of records from the pharmacy). The court in Baker determined that, "[s]ince the charges in the second indictment stem[med] from additional facts which the state did not know of before the audits, the state should be accorded a new 270-day period beginning from the time when the second indictment was returned * * *. When additional criminal charges arise from facts distinct from those supporting an original charge, or the state was unaware of such facts at that time, the state is not required to bring the accused to trial within the same statutory period as the original charge * * *." Id. "To require the state to bring additional charges within the time period of the original indictment, when the state could not have had any knowledge of the additional charges until investigating later-seized evidence, would undermine the state's ability to prosecute elaborate or complex crimes." Id.
 {¶ 8} Caddy asserts that "the State had all the evidence needed to indict the Defendant-Appellant on a charge of reckless homicide prior to the initial indictment." We disagree. Everson's cause of death was unknown until the Coroner's office completed the autopsy and issued a report in November, 2004, and the State accordingly did not know which, if any, type of homicide charge to pursue at the time of the original indictment. While Caddy acknowledged killing someone, it was unknown to the State whether Everson's death was accidental, a result of self-defense, or due to some form of manslaughter or murder. Even after the Coroner determined that Everson's death was a homicide, further investigation was required before the State could determine the circumstances of Everson's death and that Caddy, and not some other person, was responsible. Accordingly, pursuant to Baker,
Caddy's speedy trial time pertaining to the reckless homicide charge began to run on May 12, 2005, when he was indicted on that charge, and his right to a speedy trial was not violated. Caddy's first assignment of error is overruled.
 {¶ 9} We will address Caddy's second and third assignments of error together. They are as follows:
 {¶ 10} "THE TRIAL COURT ERRED WITH IT IMPOSED MAXIMUM SENTENCES ON THE DEFENDANT-APPELLANT."
 {¶ 11} and
 {¶ 12} "THE TRIAL COURT ERRED WHEN IT IMPOSED CONSECUTIVE SENTENCES ON THE DEFENDANT-APPELLANT."
 {¶ 13} The State correctly concedes that, due to recent changes in Ohio's felony sentencing scheme, Caddy must be resentenced on the charges of reckless homicide and gross abuse of a corpse. The Ohio Supreme Court determined that R.C.2929.14(C), 2929.14(E)(4) and 2929.41(A), pursuant to which Caddy was sentenced, are unconstitutional because they require judicial fact-finding before maximum or consecutive sentences are imposed, in violation of a defendant's Sixth Amendment right to a jury trial.
 {¶ 14} State v. Foster, 109 Ohio St.3d 1, 845 N.E.2d 470,2006-Ohio-856. The Foster court severed the unconstitutional provisions from the felony sentencing scheme, and the Foster
decision requires resentencing for cases pending on direct review. Id. Since Caddy received maximum consecutive sentences for reckless homicide and gross abuse of a corpse, re-sentencing is required.
Reversed and remanded for re-sentencing.
Wolff, J. and Fain, J., concur.